IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00560-OES-BNB

GEORGE M. BULL,

Plaintiff(s),

vs.

UNION PACIFIC RAILROAD COMPANY,

Defendant(s).

---

ORDER GRANTING IN PART
DEFENDANT'S MOTION *IN LIMINE* RE KRESS
AND
ORDER GRANTING IN PART
PLAINTIFF'S MOTION *IN LIMINE* RE COOPERRIDER

---

ORDER ENTERED BY MAGISTRATE JUDGE O. EDWARD SCHLATTER
Dated:  October 26, 2005

Defendant has filed a motion asking me to strike Tyler Kress, Ph.D., as an expert for plaintiff, and plaintiff has filed a motion asking me to strike Neil K. Cooperrider, Ph.D., as an expert for defendant.  Both motions ask me to evaluate the respective requests pursuant to the standards that have been outlined in the Daubert and Kumho decisions, and cases decided in their wake.

## DAUBERT PRINCIPLES

In Daubert, the United States Supreme Court held that trial courts must engage in a "gatekeeping" role with regard to the introduction of expert testimony.  Daubert, 509 U.S. at 592-97.  In considering scientific or expert testimony, the courts are concerned, in part, with the application of Rules 104 and 702 of the Federal Rules of

Evidence.

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.  This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

Id. at 592.  Once the court is aware that scientific evidence is at issue, judges are obligated to ensure that "any and all scientific testimony or evidence admitted is not only relevant, but reliable."  Id. at 589.  The Court stated, "Rule 702 . . . clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify."  Id.

To carry out their role as gatekeeper, trial courts must weigh and evaluate the admissibility of expert testimony according to several factors, including the following: (1) whether the theory or technique at issue has been subjected to testing, (2) whether the theory or technique has been subjected to publication and peer review, (3) whether the theory or technique has a known or potential rate of error, and (4) whether the theory or technique has achieved general acceptance in the particular technical or scientific community.  Id. at 593-94.  The Supreme Court has emphasized that "the test of reliability is 'flexible,'" and that Daubert's list of specific factors "neither necessarily nor exclusively applies to all experts or in every case."  Kumho, 526 U.S. at 141, 119 S.Ct. at 1171.

> Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination.

Id. at 142,

In the Kumho case, the Supreme Court was asked to decide whether the gatekeeping role of a trial judge is limited to an evaluation of "scientific testimony" only, or whether the same role should be performed with regard to all expert testimony. The Supreme Court held that the language of Rule 702 "makes no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge." Id. at 1174. Thus, Daubert's general principles apply to all expert matters which fall within the ambit of Rule 702. Id. at 1175. Regardless of the scientific or technical field from which an expert springs, the objective of the gatekeeping requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id. at 1176. The focus of the court's inquiry must be "solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 U.S. at 594.

## DISCUSSION

**1.**

Defendant states in its Response to plaintiff's Motion *In Limine* that it intends to offer Dr. Cooperrider for the following purposes:

> . . . Dr. Cooperrider is not seeking to testify about specific causation. In other words, Dr. Cooperrider is not seeking to testify that Plaintiff specifically was not injured by his exposure to whole body vibration and repeated shocks. To the contrary with respect to general causation, Dr. Cooperrider seeks to testify (1) that he engaged in the ISO [International Organization for Standardization] 2631-5 analysis (which assesses the health effects of vibration and

> shock over a long period of exposure) of the UP 6263, the locomotive which is the subject of this action; (2) about the results of this analysis; and (3) that at the levels measured on the UP 6263 there is a very low probability of an adverse health effect on the lumbar spine due to a lifetime exposure to the isolated impacts according to the "Health Guidance Caution Zone" established by the ISO.

Deft's Resp. at 15.

Plaintiff states in its Brief in Opposition to Defendant's Motion *In Limine* that it intends to offer Dr. Kress for the following purposes:

> "Dr. Kress is not a causation witness – he is a negligence witness. Essentially, he will testify that defendant knew there was a problem with its seats and locomotives, and did nothing. More specifically, Dr. Kress's report discloses that he will testify about three subjects:
>
> > 1. It has been known for many years that occupational exposure to whole body vibration can cause back injuries;
> >
> > 2. Defendant was aware that its rough riding locomotives and poor seats exposed employees to unreasonable risk of injury; and
> >
> > 3. Defendant took inadequate ergonomic measures to improve ride quality, improve seats, or educate workers about the dangers of whole body vibration.

Pltf's Br. In Opp. at 1. Plaintiff states that Dr. Kress "would not testify that the magnitude of exposure which Mr. Bull experienced caused adverse health outcomes." Id. at 4.

## 2

I am guided in my resolution of the issues presented here by Judge Babcock's decision in the case of <u>Magdaleno v. Burlington Northern R. Co.</u>, 5 F.Supp.2d 899

(D.Colo. 1998). Judge Babcock was presented with similar issues when the Burlington Northern moved to exclude the opinions of plaintiff's ergonomic expert. The types of expert opinions at issue in Magdaleno were similar, though not identical, to those presented here. In Magdaleno, the issues centered upon the probable or foreseeable effects of repetitive movements in causing carpal tunnel syndrome. Here, the issue presented in this present discussion is the probable or foreseeable effects, if any, upon railroad employees of allegedly poor seats in locomotives.

Neither side has challenged the qualifications of the expert whose opinions are being challenged. I need not address that aspect of the Daubert analysis.

Like Judge Babcock in Magdaleno, I conclude here that both experts (a) will offer opinions that are more in the nature of summaries of the literature and standards that have been generated over the years in regard to locomotive seating, and (b) will offer opinions in regard to foreseeability. To the extent that the experts intend to offer opinions of this nature, their opinions are, to paraphrase Judge Babcock, more in the nature of observations rather than expert opinions. *See* Magdaleno at 903.

Dr. Kress apparently engaged in no studies, experiments or analysis himself. However, Dr. Cooperrider states that he conducted an analysis of the locomotive seats at issue using the factors and standards that are contained in the ISO. These standards have been submitted to scientific scrutiny and subjected to peer review. Thus, Dr. Cooperrider's analysis satisfied the minimum standard of reliability under Daubert.

**ORDER**

It is therefore ORDERED as follows:

1. Plaintiff's Motion *In Limine* to Strike Testimony of Neil K. Cooperrider [Doc. 64, filed October 14, 2005] is DENIED.

2. Defendant's Motion *In Limine* to Exclude Plaintiff's Expert Witnesses [sic], Tyler Kress, Ph.D. [Doc. 56, filed October 7, 2005] is DENIED.

Dated at Denver, Colorado, this day of: October 26, 2005

BY THE COURT:

s/ O. Edward Schlatter
_____
O. Edward Schlatter
United States Magistrate Judge